# EXHIBIT "1"

## IN THE COUNTY COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
## IN AND FOR BROWARD COUNTY, FLORIDA

ANUEL ST. CLAIR,

      Plaintiff,                            Case No.

v.                                       JURY TRIAL DEMANDED

GC SERVICES LIMITED PARTNERSHIP,        INJUNCTIVE RELIEF SOUGHT

      Defendant.

_____/

## COMPLAINT

Plaintiff Anuel St. Clair ("Plaintiff") sues Defendant GC Services Limited Partnership, ("Defendant") for violations the Florida Consumer Collection Practices Act ("FCCPA") and the Fair Debt Collection Practices Act ("FDCPA").

### JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over Plaintiff and Defendant (collectively, the "Parties"), because the cause of action arises within the jurisdiction of this Court and, thus, venue and jurisdiction are proper.

2.      This Court has personal jurisdiction over Defendant because Defendant is operating, present, and/or doing business within this jurisdiction and because the complained of conduct of Defendant occurred within Broward County, Florida.

3.      The amount in controversy exceeds the sum or value of $30,000.00 exclusive of interest, costs, and attorney's fees.

4.      Venue of this action is proper in this Court because, pursuant to Fla. Stat. § 47.011, *et seq.*, the cause of action alleged below arose in Broward County Florida.

## PARTIES

5.      Plaintiff is a natural person, and a citizen of the State of Florida, residing in Broward County, Florida.

6.      Defendant is a Delaware Corporation, with its principal place of business located in Harris, Texas 77081.

## DEMAND FOR JURY TRIAL

7.      Plaintiff, respectfully, demands a trial by jury on all counts and issues so triable.

## FACTUAL ALLEGATIONS

8.      On a date better known by Defendant, Defendant began attempting to collect a debt (the "Consumer Debt") from Plaintiff.

9.      The Consumer Debt is an obligation allegedly had by Plaintiff to pay money arising from a transaction between the creditor of the Consumer Debt, American Honda Finance Corporation, and Plaintiff (the "Subject Service").

10.     Defendant alleges the Original Account Number for the Subject Service ends in 9245.

11.     The Subject Service was primarily for personal, family, or household purposes.

12.     Defendant is a business entity engaged in the business of soliciting consumer debts for collection.

13.     Defendant is a business entity engaged in the business of collecting consumer debts.

14.     Defendant regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15.     Defendant is registered with the Florida Office of Financial Regulation as a "Consumer Collection Agency."

16.     Defendant's "Consumer Collection Agency" license number is CCA0900872.

17.     Defendant maintains all the records specified in Rule 69V-180.080, Florida Administrative Code.

18.     The records specified by Rule 69V-180.080, Florida Administrative Code, of which Defendant does maintain, are current to within one week of the current date.

19.     Defendant is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

20.     Defendant is a "person" within the meaning of Fla. Stat. § 559.72.

21.     On a date better known by Defendant, Defendant transmitted Plaintiff's personal information to a third-party (the "Third-Party").

22.     The personal information Defendant transmitted to the Third-Party included, but was not limited to: [1] Plaintiff's name; [2] Plaintiff's address; [3] the existence of the Consumer Debt; [4] the amount of the consumer debt; [5] the creditor of the Consumer Debt; [6] that Plaintiff was the alleged debtor of the Consumer Debt; [7] information regarding the Subject Service; and [8] that Plaintiff did not pay the Consumer Debt and/or defaulted on the Consumer Debt (collectively, the "Transmitted Information").

23.     The Third-Party, of whom Defendant transmitted Plaintiff's personal information to, compiled Plaintiff's personal information and prepared a letter that was to be sent to Plaintiff in an attempt to collect the Consumer Debt.

24.     The Transmitted Information affected Plaintiff's reputation. For example, the transmission of such information affected Plaintiff's reputation regarding the repayment of debts, Plaintiff's reputation of truthfulness, Plaintiff's reputation of solvency, and Plaintiff's reputation regarding trustworthiness.

3

25.     Defendant's transmission of Plaintiff's personal information to the Third-Party was a communication in connection with the collect of the Consumer Debt.

26.     In addition to transmitting Plaintiff's personal information to the Third-Party, Defendant also transmitted Plaintiff's personal information to *other* third-party entities in connection with the collection of the Consumer Debt. Defendant transmitted such information to these *other* third-party entities by, *including but not limited to*: [1] utilizing "skip trace" services; [2] utilizing bankruptcy, SCRA, probate, and other "scrubbing" services; and [3] utilizing independent third-party contractors to attempt to collect the Consumer debt from Plaintiff.

27.     On a date better known by Defendant, Defendant sent the letter prepared and/or complied by the Third-Party to Plaintiff, of which was internally dated November 23, 2020, (the "Collection Letter") in an attempt to collect the Consumer Debt.

28.     Attached as **Exhibit A** is a copy of Collection Letter.

29.     Defendant's transmission of Plaintiff's personal information to the Third-Party is an explicit violation of § 1692c(b) of the FDCPA. *See Hunstein v. Preferred Collection & Mgmt. Servs.*, No. 19-14434, 2021 U.S. App. LEXIS 11648 (11th Cir. Apr. 21, 2021) (a complete copy of the *Hunstein* opinion is attached as **Exhibit B**).

30.     The Collection Letter contains a bar code and/or Quick Response ("QR") code, of which are indicative of Defendant's use of the Third-Party to prepare, print, package, compile, and/or otherwise send the Collection Letter. The Collection Letter also includes a P.O. Box return address different from the Creditor's address, which further indicates Defendant's use of the Third-Party.

31.     For Defendant to maintain a valid consumer collection agency license with the Florida Department of State (*so to otherwise lawfully collect, or attempt to collect, consumer debts*

4

*from Florida consumers*) Defendant knew it was required to tailor its debt collector methods to be in compliance with both the FDCPA and FCCPA.

32.     Defendant knew that the Transmitted Information constituted an unlawful transmission of Plaintiff's personal information in violation of § 1692c(b) of the FDCPA.

33.     The Third-Party did not have any legitimate need for the Transmitted Information, as the Transmitted Information constituted an unlawful transmission of Plaintiff's personal information in violation of § 1692c(b) of the FDCPA.

## COUNT 1
## VIOLATION OF 15 U.S.C. 1692c(b)

34.     Plaintiff incorporates by reference paragraphs 1-33 of this Complaint.

35.     Pursuant to § 1692c(b) of the FDCPA, "*a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector*." 15 U.S.C. 1692c(b) (emphasis added).

36.     As set forth above, Defendant's transmission of Plaintiff's personal information to the Third-Party violates § 1692c(b) of the FDCPA. *See Hunstein*, No. 19-14434, 2021 U.S. App. LEXIS 11648 ("[w]e hold (1) that a violation of § 1692c(b) gives rise to a concrete injury in fact under Article III and (2) that the debt collector's transmittal of the consumer's personal information to its dunning vendor constituted a communication 'in connection with the collection of any debt' within the meaning of § 1692c(b).") Accordingly, Defendant violated § 1692c(b) of the FDCPA when it transmitted Plaintiff's personal information to the Third-Party.

37.     WHEREFORE, Plaintiff respectfully requests this Court to enter a judgment against Defendant, awarding Plaintiff the following relief:

(a) Statutory and actual damages as provided by 15 U.S.C. § 1692k;

(b) Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1692k; and

(c) Any other relief that this Court deems appropriate under the circumstances.

**COUNT 2**
**VIOLATION OF FLA. STAT. 559.72(5)**

38.     Plaintiff incorporates by reference paragraphs 1-33 of this Complaint.

39.     Pursuant to § 559.72(5) of the FCCPA, in collecting consumer debts, no person

shall: "*[d]isclose to a person other than the debtor or her or his family information affecting the*

*debtor's reputation, whether or not for credit worthiness, with knowledge or reason to know that*

*the other person does not have a legitimate business need for the information or that the*

*information is false.*" Fla Stat. § 559.72(5) (emphasis added).

40.     As set forth above, Defendant unlawfully transmitted Plaintiff's personal

information, by and through the Transmitted Information, to the Third-Party, whereby said

transmitted information affective Plaintiff's reputation because the Third-Party did not have any

legitimate need for unlawfully transmitted personal information of Plaintiff.

41.     WHEREFORE, Plaintiff respectfully requests this Court to enter a judgment

against Defendant, awarding Plaintiff the following relief:

(a) Statutory and actual damages pursuant to Fla. Stat. §559.77(2);

(b) An injunction prohibiting Defendant from engaging in further collection
    activities directed at Plaintiff that are in violation of the FCCPA;

(c) Costs and reasonable attorneys' fees pursuant to Fla. Stat. §559.77(2); and

(d) Any other relief that this Court deems appropriate under the circumstances.

Dated: July 26, 2021

Respectfully submitted,

**SHAMIS & GENTILE, P.A.**
*/s/ Andrew J. Shamis*
Andrew J. Shamis, Esq.
Florida Bar No. 101754
ashamis@shamisgentile.com
14 NE 1st Avenue, Suite 705
Miami, Florida 33132
Telephone: 305-479-2299

**EDELSBERG LAW, P.A.**
Scott Edelsberg, Esq.
Florida Bar No. 0100537
Christopher Gold, Esq.
Florida Bar No. 088733
scott@edelsberglaw.com
chris@edelsberglaw.com
20900 NE 30th Ave., Suite 417
Aventura, FL 33180
Office: (786) 289-9471
Direct: (305) 975-3320
Fax: (786) 623-0915

*Counsel for the Plaintiff*

# EXHIBIT A

# NATIONAL ENTERPRISE SYSTEMS

2479 Edison Blvd., Unit A   ◆   Twinsburg, OH 44087-2340
Ph. (877) 603-7161

November 23, 2020

Anuel St Clair
8008 Sw 6th St
North Lauderdale FL 33068-2109

Current Creditor: Credit First National Association
Debt Description: Tires Plus
Account Number: XXXXXXXXXXXXX9031
NES Account Number: 30313553 CFNA01
Please contact: (877) 603-7161

**Balance: $ 454.77**

The above referenced current creditor has placed your account with our office for collection.

This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose.

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing at 2479 Edison Blvd., Unit A, Twinsburg, OH 44087 within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will: obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing at 2479 Edison Blvd., Unit A, Twinsburg, OH 44087 within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

If you make payment on this account by check, the face amount of the check may be presented to your bank by paper draft or electronically as permitted by law.

IONNESI02001CFNA1_662782144

*NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION*

***PLEASE COMPLETE AND RETURN THE FORM BELOW WITH YOUR PAYMENT.***

ONNESI02
PO Box 1280
Oaks, PA 19456-1280
ADDRESS SERVICE REQUESTED

Daytime Phone:   (_____) _____ - _____
Evening Phone:   (_____) _____ - _____

103

Anuel St Clair
8008 Sw 6th St
North Lauderdale FL 33068-2109

**NATIONAL ENTERPRISE SYSTEMS**
2479 Edison Blvd., Unit A
Twinsburg OH 44087-2340

November 23, 2020          30313553          **CFNA**

Account #:          XXXXXXXXXXXXX9031
Balance:          $ 454.77

**California Residents:**
The state Rosenthal Fair Debt Collection Practices Act and the Federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-Help or www.ftc.gov. Nonprofit credit counseling services may be available in the area.

**Colorado Residents:**
FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE HTTPS://COAG.GOV/OFFICE-SECTIONS/CONSUMER-PROTECTION/CONSUMER-CREDIT-UNIT/COLLECTION-AGENCY-REGULATION.

A consumer has the right to request in writing that a debt collector or collection agency cease further communication with the consumer. A written request to cease communication will not prohibit the debt collector or collection agency from taking any other action authorized by law to collect the debt.

The National Enterprise Systems, Inc. Resident Manager for the State of Colorado is:
Virtuoso Sourcing Group, LLC
4500 Cherry Creek Drive South, Suite 500
Glendale, Colorado 80246
720-508-8689

**Maine and Massachusetts Residents:**
Office Hours: M-Th 8:00 AM – 7:00 PM EST, Fri 8:00 AM – 4:30 PM EST.
Phone number: 877-603-7165

**Massachusetts Residents:**
NOTICE OF IMPORTANT RIGHTS: YOU HAVE THE RIGHT TO MAKE A WRITTEN OR ORAL REQUEST THAT TELEPHONE CALLS REGARDING YOUR DEBT NOT BE MADE TO YOU AT YOUR PLACE OF EMPLOYMENT. ANY SUCH ORAL REQUEST WILL BE VALID FOR ONLY TEN DAYS UNLESS YOU PROVIDE WRITTEN CONFIRMATION OF THE REQUEST POSTMARKED OR DELIVERED WITHIN SEVEN DAYS OF SUCH REQUEST. YOU MAY TERMINATE THIS REQUEST BY WRITING TO THE DEBT COLLECTOR.

**Minnesota Residents:**
This collection agency is licensed by the Minnesota Department of Commerce.

**New York State Residents:**
Debt collectors, in accordance with the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., are prohibited from engaging in abusive, deceptive, and unfair debt collection efforts, including but not limited to the use or threat of violence; the use of obscene or profane language; and repeated phone calls made with the intent to annoy, abuse, or harass.

If a creditor or debt collector receives a money judgment against you in court, state and federal laws may prevent the following types of income from being taken to pay the debt: Supplemental security income, (SSI); Social Security; Public assistance (welfare); Spousal support, maintenance (alimony) or child support; Unemployment benefits; Disability benefits; Workers' compensation benefits; Public or private pensions; Veterans' benefits; Federal student loans, federal student grants, and federal work study funds; and ninety percent of your wages or salary earned in the last sixty days.

**New York City Residents:**
New York City Department of Consumer Affairs License Number: 1129025
Phone number: 877-603-7165
Compliance Department Manager: Eric Thut

Please be advised that language access services, including the translation of information into a language other than English, may be available. A translation and description of commonly-used debt collection terms is available in multiple languages on the New York City Department of Consumer and Worker Protection's website, www.nyc.gov/dca.

**North Carolina Residents:**
N.C. Permit No. 101691. 29125 Solon Road, Solon, OH 44139
N.C. Permit No. 112832. 2479 Edison Blvd., Unit A, Twinsburg, OH 44087
N.C. Permit No. 113131. 150 East Campus View Blvd., Suite 280, Columbus, OH 43235

**Tennessee Residents:**
This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance.

**Wisconsin Residents:**
This collection agency is licensed by the Division of Banking in the Wisconsin Department of Financial Institutions, www.wdfi.org.

# EXHIBIT B

# *Hunstein v. Preferred Collection & Mgmt. Servs.*

United States Court of Appeals for the Eleventh Circuit

April 21, 2021, Decided

No. 19-14434

**Reporter**

994 F.3d 1341 *; 2021 U.S. App. LEXIS 11648 **; 28 Fla. L. Weekly Fed. C 2756; 2021 WL 1556069

RICHARD HUNSTEIN, Plaintiff - Appellant, versus PREFERRED COLLECTION AND MANAGEMENT SERVICES, INC., Defendant - Appellee.

**Prior History:** **[**1]** Appeal from the United States District Court for the Middle District of Florida. D.C. Docket No. 8:19-cv-00983-TPB-TGW.

*Hunstein v. Preferred Collection & Mgmt. Servs., Inc., 2019 U.S. Dist. LEXIS 187061, 2019 WL 5578878 (M.D. Fla., Oct. 29, 2019)*

**Disposition:** REVERSED and REMANDED.

**Counsel:** For RICHARD HUNSTEIN, Plaintiff - Appellant: Thomas Martin Bonan, Seraph Legal, PA, TAMPA, FL.

For PREFERRED COLLECTION AND MANAGEMENT SERVICES, INC., Defendant - Appellee: Robert Alexander Vigh, Solomon Vigh, PA, TAMPA, FL.

**Judges:** Before JORDAN, NEWSOM, and TJOFLAT, Circuit Judges.

**Opinion by:** NEWSOM

# Opinion

 **[*1344]**  NEWSOM, Circuit Judge:

This appeal presents an interesting question of first impression under the Fair Debt Collection Practices Act—and, like so many other cases arising under federal statutes these days, requires us first to consider whether our plaintiff has Article III standing.

The short story: A debt collector electronically transmitted data concerning a consumer's debt—including his name, his outstanding balance, the fact that his debt resulted from his son's medical treatment, and his son's name—to a third-party vendor. The third-party vendor then used the data to create, print, and mail a "dunning" letter to the consumer. The consumer filed suit alleging that, in sending his personal information to the vendor, the debt collector had violated *15 U.S.C. § 1692c(b)*, which, with certain **[**2]** exceptions, prohibits debt collectors from communicating consumers' personal information to third parties "in **[*1345]** connection with the collection of any debt." The district court rejected the consumer's reading of *§ 1692c(b)* and dismissed his suit. On appeal, we must consider, as a threshold matter, whether a violation of *§ 1692c(b)* gives rise to a concrete injury in fact under Article III, and, on the merits, whether the debt collector's communication with its dunning vendor was "in connection with the collection of any debt."

994 F.3d 1341, *1345; 2021 U.S. App. LEXIS 11648, **2

We hold (1) that a violation of *§ 1692c(b)* gives rise to a concrete injury in fact under Article III and (2) that the debt collector's transmittal of the consumer's personal information to its dunning vendor constituted a communication "in connection with the collection of any debt" within the meaning of *§ 1692c(b)*. Accordingly, we reverse the judgment of the district court and remand for further proceedings.

# I

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors" and "to protect consumers against debt collection abuses." *15 U.S.C. § 1692(e)*. To that end, *§ 1692c(b)* of the FDCPA, titled "Communication with third parties," provides that—

> Except as provided in *section 1692b* of this title, without the prior consent **[\*\*3]** of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

*15 U.S.C. § 1692c(b)*. The provision that *§ 1692c(b)* cross-references—*§ 1692b*—governs the manner in which a debt collector may communicate "with any person other than the consumer for the purpose of acquiring location information." *15 U.S.C. § 1692b*. The FDCPA thus broadly prohibits a debt collector from communicating with anyone other than the consumer "in connection with the collection of any debt," subject to several carefully crafted exceptions—some enumerated in *§ 1692c(b)*, and others in *§ 1692b*.

Richard Hunstein incurred a debt to Johns Hopkins All Children's Hospital arising out of his son's medical treatment. The hospital assigned the debt to Preferred Collections & Management Services, Inc. for collection. Preferred in turn hired Compumail, a California-based commercial mail vendor, **[\*\*4]** to handle the collection. Preferred electronically transmitted to Compumail certain information about Hunstein, including, among other things: (1) his status as a debtor, (2) the exact balance of his debt, (3) the entity to which he owed the debt, (4) that the debt concerned his son's medical treatment, and (5) his son's name. Compumail used that information to generate and send a dunning letter to Hunstein.

Hunstein filed a complaint, alleging violations of both the FDCPA, *see 15 U.S.C. §§1692c(b)* and *1692f*, and the Florida Consumer Collection Practices Act, *see Fla. Stat. § 559.72(5)*. As relevant here, the district court dismissed Hunstein's action for failure to state a claim, concluding that he hadn't sufficiently alleged that Preferred's transmittal to Compumail violated *§ 1692c(b)* because it didn't qualify as a communication "in connection with the collection of a[ny] debt."[1]

Hunstein appealed, and we requested supplemental briefing on the question whether he had Article III standing to sue, which we now consider along with the merits.[2]

---

[1] The district court held for the same reason that Hunstein had not stated a claim for a violation of *§ 1692f*. The district court then declined to accept supplemental jurisdiction over Hunstein's state law claim. Hunstein's appeal addresses only the portion of his complaint relating to *§ 1692c(b)*.

[2] Whether Hunstein has standing to sue is a threshold jurisdictional question that we review de novo. *Debernardis v. IQ Formulations, LLC, 942 F.3d 1076, 1083 (11th Cir. 2019)*. "We review the decision to dismiss Plaintiff's complaint pursuant to *Rule 12(b)(6)* de novo, applying the same standard as the district court." *Holzman v. Malcolm S. Gerald & Assocs., Inc., 920 F.3d 1264, 1268 (11th Cir. 2019)*. Accepting the complaint's

## II

First things first. Because standing implicates our subject matter jurisdiction, we must address it at the outset, before turning to the merits. *Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101-02, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998)*. Article III of the Constitution grants federal courts "judicial Power" to resolve **[**5]** "Cases" and "Controversies." *U.S. Const. art. III, §§ 1-2*. This case-or-controversy requirement, which has been construed to embody the doctrine of standing, "confines the federal courts to a properly judicial role." *Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016)*. The "irreducible constitutional minimum" of Article III standing entails three elements: injury in fact, causation, and redressability. *Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)*.

Hunstein's appeal involves the first element, injury in fact, which consists of "an invasion of a legally protected interest" that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id. at 560* (quotation marks omitted). In *Trichell v. Midland Credit Mgmt., Inc., 964 F.3d 990 (11th Cir. 2020)*, a case involving **[*1346]** the FDCPA, we reiterated that "[e]ach subsidiary element of injury—a legally protected interest, concreteness, particularization, and imminence—must be satisfied." *Id. at 996-97*. The standing question here implicates the concreteness sub-element.

A plaintiff can meet the concreteness requirement in any of three ways. First, he can allege a tangible harm—a category that is "the most obvious and easiest to understand" and that includes, among other things, physical injury, financial loss, and emotional distress. *See Muransky v. Godiva Chocolatier, Inc., 979 F.3d 917, 926 (11th Cir. 2020)* (en banc); *see also Huff v. TeleCheck Servs., Inc., 923 F.3d 458, 463 (6th Cir. 2019)*. Second, a plaintiff can allege a "risk of real harm." *Muransky, 979 F.3d at 927*. Third, in **[**6]** the absence of a tangible injury or a risk of real harm, a plaintiff can identify a statutory violation that gives rise to an intangible-but-nonetheless-concrete injury. *Spokeo, 136 S. Ct. at 1549*. We consider each possibility in turn.

### A

Hunstein doesn't allege a tangible harm. The complaint contains no allegations of physical injury, financial loss, or emotional distress. Instead, the complaint (1) conclusorily asserts that "[i]f a debt collector 'conveys information regarding the debt to a third party—informs the third party that the debt exists or provides information about the details of the debt—then the debtor may well be harmed by the spread of this information,'" and (2) vaguely references the "known, negative effect that disclosing sensitive medical information to an unauthorized third-party has on consumers[.]" In his supplemental brief, Hunstein asks us to construe these assertions as allegations of emotional harm, arguing that he was "humiliated, embarrassed, and suffered severe anxiety[.]" But we have "repeatedly held that an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court." *Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004)* (quotation marks omitted). Hunstein thus cannot establish **[**7]** standing on the basis of a tangible harm.

### B

---

allegations as true and construing the facts in the light most favorable to Hunstein, "the relevant inquiry is whether Plaintiff has stated a 'plausible claim for relief' under the FDCPA." *Id.* (quoting *Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009))*.

Nor can Hunstein demonstrate standing by the second route—showing a "risk of real harm." "[W]hile very nearly any level of direct injury is sufficient to show a concrete harm, the risk-of-harm analysis entails a more demanding standard—courts are charged with considering the magnitude of the risk." *Muransky, 979 F.3d at 927*. "Factual allegations that establish a risk that is substantial, significant, or poses a realistic danger will clear this bar[.]" *Id. at 933*. Put slightly differently, to constitute injury in fact, the "threatened injury must be certainly impending." *Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409, 133 S. Ct. 1138, 185 L. Ed. 2d 264 (2013)*. Again, Hunstein alleges only that a debtor "may well be harmed by the spread" of the sort of information at issue here. That vague allegation falls short of a risk that is "substantial, significant, or poses a realistic danger," *Muransky, 979 F.3d at 933*, or is "certainly impending," *Clapper, 568 U.S. at 409*.

**C**

We thus consider whether Hunstein can show standing in the third manner—through a statutory violation. "[T]he violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact," such that "a plaintiff . . . need not allege any additional harm beyond the one **[*1347]** Congress has identified." *Spokeo, 136 S. Ct. at 1549*. *Spokeo* instructs **[**8]** that in determining whether a statutory violation confers Article III standing, we should consider "history and the judgment of Congress." *Id.*

**1**

Starting with history, we can discern a concrete injury where "intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* Put differently, we look to "whether the statutory violation at issue led to a type of harm that has historically been recognized as actionable." *Muransky, 979 F.3d at 926*. *Muransky* explains that the "fit between a new statute and a pedigreed common-law cause of action need not be perfect, but we are called to consider at a minimum whether the harms match up between the two." *Id.*

For more than a century, invasions of personal privacy have been regarded as a valid basis for tort suits in American courts. *See, e.g., Pavesich v. New England Life Ins. Co., 122 Ga. 190, 50 S.E. 68 (1905); Munden v. Harris, 153 Mo. App. 652, 134 S.W. 1076 (1911); Kunz v. Allen, 102 Kan. 883, 172 P. 532 (1918)*. By 1977, the Restatement (Second) noted that "the existence of a right of privacy is now recognized in the great majority of the American jurisdictions that have considered the question." *Restatement (Second) of Torts § 652A cmt. a*. (Am. Law Inst. 1977).

More particularly, the term "invasion of privacy" comprises an identifiable family of common-law torts—including, most relevantly **[**9]** here, "public disclosure of private facts." *Invasion of Privacy*, Black's Law Dictionary 952 (10th ed. 2014). It is hornbook law that "[o]ne who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public." *Restatement (Second) of Torts § 652D* (1977); *accord, e.g.*, 77 C.J.S. Right of Privacy and Publicity *§ 32*; *62A Am. Jur. 2d Privacy § 79*. Indeed, the Supreme Court itself has recognized "the individual interest in avoiding disclosure of personal matters" and has recognized that "both the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person." *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 763, 109 S. Ct. 1468, 103 L. Ed. 2d 774 (1989)* (citation and quotation marks omitted).

Having established the historical pedigree of invasion-of-privacy torts—in particular, the sub-species applicable to the public disclosure of private facts—we next consider whether Preferred's alleged statutory violation is sufficiently analogous. Notably, the FDCPA's statutory findings explicitly identify "invasions of individual privacy" as one of the harms against which the **[**10]** statute is directed. *15 U.S.C. § 1692(a)*. And to that end, the statutory provision under which Hunstein has sued here expressly prohibits a debt collector from "communicat[ing]" with any but a few persons or entities "in connection with the collection of any debt." *Id. § 1692c(b)*. Although *§ 1692c(b)* isn't identical in all respects to the invasion-of-privacy tort, we have no difficulty concluding that it bears "a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo, 136 S. Ct. at 1549*.

*Perry v. Cable News Network, Inc., 854 F.3d 1336 (11th Cir. 2017)*, strongly supports that conclusion. *Perry* concerned a plaintiff's allegations that CNN divulged **[*1348]** his news-viewing history to a third-party in violation of the Video Privacy Protection Act. Emphasizing the widespread recognition both of the right to privacy in general and, more particularly, the privacy interest implicated by the VPPA—the interest in preventing the disclosure of personal information—the Court in *Perry* concluded that the statutory violation of the VPPA constituted a cognizable Article III injury. *Id. at 1341* (citing *Reporters, 489 U.S. at 762-63*). Hunstein's allegations closely resemble those in *Perry*. The VPPA prohibits "[a] video tape service provider [from] knowingly disclos[ing], to any person, personally **[**11]** identifiable information concerning any consumer of such provider." *18 U.S.C. § 2710(b)*. As relevant here, the FDCPA similarly prohibits a debt collector from "communicat[ing], in connection with the collection of any debt, with any person other than the consumer[.]" *§1692c(b)*. The two statutes thus share a common structure—A may not share information about B with C. Because we find *Perry*'s reasoning persuasive and analogous, we adopt it here.

Our decision in *Trichell* does not require a contrary conclusion. That case addressed a claim under a different FDCPA provision, *§ 1692e*, which states that a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." *15 U.S.C. § 1692e*. The plaintiffs in *Trichell* alleged that debt collectors had sent them misleading letters, and in assessing their claims' pedigree, we determined that the "closest historical comparison is to causes of action for fraudulent or negligent misrepresentation." *964 F.3d at 998*. Canvassing the common-law history of those torts, we held that the plaintiffs' claims lacked the necessary "close relationship" to them. *Id. at 997-98*. That conclusion is entirely consistent with our holding here that Hunstein has standing to sue under **[**12]** a different FDCPA provision. Hunstein's claim, unlike the *Trichell* plaintiffs', arises under *§ 1692c(b)* and bears a close relationship to a common-law tort.

**2**

Although it presents a closer question, we conclude that "the judgment of Congress" also favors Hunstein. Congress, of course, expresses its "judgment" in only one way—through the text of duly enacted statutes. Even assuming that *§ 1692c(b)* does not clearly enough express Congress's judgment that injuries of the sort that Hunstein alleges are actionable, here Congress went further to "explain itself." *Huff, 923 F.3d at 466*. In particular, as already noted, in a section of the FDCPA titled "Congressional findings and declaration of purpose," Congress identified the "invasion[] of individual privacy" as one of the harms against which the statute is directed. *15 U.S.C. § 1692(a)*. That, we think, is sufficient.

It's true that we pointed in *Trichell* to the FDCPA's language that a person may recover "any actual damage sustained by such person as a result of" an FDCPA violation and "such additional damages as the court may allow," *15 U.S.C. § 1692k(a)*, as evidence of Congress's judgment that violations of a different provision—*§ 1692e*—do not ipso facto constitute a concrete injury. *Trichell, 964 F.3d at*

994 F.3d 1341, *1348; 2021 U.S. App. LEXIS 11648, **12

*1000*. We don't read *§ 1692k(a)*, though, as categorically **[**13]** limiting the class of FDCPA plaintiffs to those with *actual damages*—particularly where, as here, the FDCPA's statutory findings expressly address the very harm alleged—an "invasion[] of individual privacy." *15 U.S.C. § 1692(a)*.

* * *

Because (1) *§ 1692c(b)* bears a close relationship to a harm that American courts have long recognized as cognizable and (2) Congress's judgment indicates that violations of *§1692c(b)* constitute a concrete **[*1349]** injury, we conclude that Hunstein has the requisite standing to sue.

## III

Having determined that Hunstein has standing to sue under *§ 1692c(b)*, we now consider the merits of his case. Recall that *§ 1692c(b)* states that, subject to several exceptions, "a debt collector may not communicate, in connection with the collection of any debt," with anyone other than the consumer. *15 U.S.C. § 1692c(b)*. The parties agree that Preferred is a "debt collector," that Hunstein is a "consumer," and that the alleged debt at issue here was a "consumer debt," all within the meaning of *§ 1692c(b)*. Helpfully, the parties also agree that Preferred's transmittal of Hunstein's personal information to Compumail constitutes a "communication" within the meaning of the statute.[3] Accordingly, the sole question before us is whether Preferred's communication with Compumail **[**14]** was "in connection with the collection of any debt," such that it violates *§1692c(b)*. Hunstein contends that the plain meaning of the phrase "in connection with the collection of any debt" and relevant precedents show that it was and does. Preferred, conversely, urges us to adopt a "factor-based analysis" that shows that, it says, its communication with Compumail was not "in connection with the collection of any debt."

We begin with the plain meaning of the phrase "in connection with" and its cognate word, "connection." Dictionaries have adopted broad definitions of both. Webster's Third defines "connection" to mean "relationship or association." *Connection*, Webster's Third International Dictionary at 481 (1961), and the Oxford Dictionary of English defines the key phrase "in connection with" to mean "with reference to [or] concerning," *In Connection With*, Oxford Dictionary of English at 369 (2010). Usage authorities further explain that the phrase "in connection with" is "invariably a vague, loose connective." Bryan A. Garner, Garner's Dictionary of Legal Usage 440 (3d ed. 2011).

Preferred's transmittal to Compumail included specific details regarding Hunstein's debt: Hunstein's status as a **[**15]** debtor, the precise amount of his debt, the entity to which the debt was owed, and the fact that the debt concerned his son's medical treatment, among other things. It seems to us inescapable that Preferred's communication to Compumail at least "concerned," was "with reference to," and bore a "relationship [or] association" to its collection of Hunstein's debt. We thus hold that Hunstein has alleged a communication "in connection with the collection of any debt" as that phrase is commonly understood.

Preferred resists that conclusion on three different grounds, which we address in turn.

## A

First, Preferred relies on our interpretation of another FDCPA provision, *§ 1692e*, to argue that communications "in connection with the collection of any debt" necessarily entail a demand for

---

[3] *Section 1692a(2)* defines communication as "the conveying of information regarding a debt directly or indirectly to any person through any medium." *15 U.S.C. § 1692a(2)*.

payment. In relevant part, *§ 1692e* states that "[a] debt collector may not use any false, deceptive, or misleading representation or means *in connection with the collection of any debt*." *15 U.S.C. § 1692e* (emphasis added). In the line of cases interpreting the meaning of "in connection with the collection of any debt" in *§ 1692e*, we have focused on the language of the underlying communication. In *Reese v. Ellis, Painter, Ratterree & Adams, LLP,* for **[**16]** instance, in concluding **[*1350]** that a law firm's letter to a consumer was "in connection with the collection of any debt" within the meaning of *§ 1692e*, we emphasized that the letter expressly stated that the firm was attempting to collect a debt and was acting as a debt collector, demanded full and immediate payment, and threatened to add attorneys' fees to the outstanding balance if the debtors didn't pay. *678 F.3d 1211, 1217 (11th Cir. 2012)*. Similarly, in *Caceres v. McCalla Raymer, LLC,* we held that a collection letter constituted a "communication in connection with the collection of a[ny] debt" under *§ 1692e* for similar reasons. Quoting the letter, we emphasized "that it is 'for the purpose of collecting a debt;' it refers in two additional paragraphs to 'collection efforts;' it states that collections efforts will continue and that additional attorneys' fees and costs will accrue; it states the amount of the debt and indicates that it must be paid in certified funds; and it gives the name of the creditor and supplies the law firm's phone number in the paragraph where it talks about payments." *755 F.3d 1299, 1301-03 (11th Cir. 2014)*.

Relying on *Caceres* and *Reese*—both of which, again, addressed *§ 1692e*—the district court here adopted the following test:

> When determining whether a **[**17]** communication was made in connection with the collection of a[ny] debt, the courts look to the language of the communication itself to ascertain whether it contains a demand for payment and warns of additional fees or actions if payment is not tendered. Consequently, when determining whether the transmission of information to a third party constitutes a violation of the FDCPA, it is important to consider whether the communication makes an express or implied demand for payment.

The district court's conclusion that the phrase "in connection with the collection of any debt" necessarily entails a demand for payment defies the language and structure of *§ 1692c(b)* for two separate but related reasons—neither of which applies to *§ 1692e*. First, the demand-for-payment interpretation would render superfluous the exceptions spelled out in *§§ 1692c(b)* and *1692b*. Consider as an initial matter the exceptions specified in *§ 1692c(b)* itself: "[A] debt collector may not communicate, in connection with the collection of any debt, with any person *other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector*[.]" *15 U.S.C. § 1692c(b)* (emphasis added). **[**18]** Communications with four of the six excepted parties—a consumer reporting agency, the creditor, the attorney of the creditor, and the attorney of the debt collector—would *never* include a demand for payment. The same is true of the parties covered by *§ 1692b* and, by textual cross-reference, excluded from *§ 1692c(b)*'s coverage: "person[s] other than the consumer" with whom a debt collector might communicate "for the purpose of acquiring location information about the consumer." *Id. § 1692b*. A debt collector would presumably never make a demand for payment of a party matching that description.

The upshot is that the phrase "in connection with the collection of any debt" in *§ 1692c(b)* must mean something more than a mere demand for payment. Otherwise, Congress's enumerated exceptions would be redundant. Under the district court's demand-for-payment interpretation, Congress wouldn't have needed to include exceptions for communications with consumer reporting agencies, creditors, attorneys of creditors, attorneys of debt collectors, or persons providing a debtor's location information; those communications would have been foreclosed ipso facto by the phrase "in connection with the collection of any debt." It is a **[*1351]** "cardinal **[**19]** principle of statutory construction" that "a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous[.]" *Duncan v. Walker, 533 U.S. 167,*

*174, 121 S. Ct. 2120, 150 L. Ed. 2d 251 (2001)* (quotation marks omitted); *accord, e.g.*, Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 174 (2012) ("If possible, every word and every provision is to be given effect . . . . None should be ignored. None should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence."). Because it is possible—and indeed, we think, more natural—to interpret *§ 1692c(b)* in a way that does not render most of its textually specified exceptions redundant, we will do so.

Second, and relatedly, the district court's interpretation renders yet another portion of *§ 1692c(b)* meaningless. By insisting on a demand for payment, the district court essentially interpreted "in connection with the collection of any debt" to mean "to collect any debt." Under this interpretation, the key phrase "in connection with" has no independent meaning or force. But as just explained, we have a duty to "give effect, if possible, to every clause and word of a statute[.]" *Duncan, 533 U.S. at 174*.

The district court **[\*\*20]** seems to have been led astray by its reliance on decisions interpreting *§ 1692e*, whose language and operation are different from *§ 1692c(b)*'s in important respects. As a linguistic matter, *§ 1692e* contains none of the specific exceptions that *§ 1692c(b)* does; accordingly, there was no risk in *Reese* or *Caceres* that, by reading a "demand for payment" gloss into *§ 1692e*, we would render other portions of that statute redundant or meaningless. And as an operational matter, *§ 1692e*—which prohibits "false, deceptive, or misleading representation or means in connection with the collection of any debt"—covers the sorts of claims that are brought by recipients of debt collectors' communications—i.e., debtors. *See Caceres, 755 F.3d at 1300-1301* (case brought by recipient of letter, the debtor); *Reese, 678 F.3d at 1214* (same). As its title indicates, by contrast, *§ 1692c(b)*, targets debt collectors' "[c]ommunication with third parties," not debtors. In the typical *§ 1692c(b)* case, the debtor isn't the recipient of the challenged communication. Linguistic differences aside, this practical operational difference undermines any argument that the meaning of the phrase "in connection with the collection of any debt" must necessarily be the same in *§ 1692c(b)* as in *§ 1692e*.


**B**

Preferred separately urges us to adopt the holistic, multi-factoring **[\*\*21]** balancing test that the Sixth Circuit decreed in its unpublished opinion in *Goodson v. Bank of Am., N.A., 600 Fed. Appx. 422 (6th Cir. 2015)*. That test counsels courts confronting *§ 1692e*'s "in connection with the collection of any debt" language to take into account the following seven considerations:

(1) the nature of the relationship of the parties; (2) whether the communication expressly demanded payment or stated a balance due; (3) whether it was sent in response to an inquiry or request by the debtor; (4) whether the statements were part of a strategy to make payment more likely; (5) whether the communication was from a debt collector; (6) whether it stated that it was an attempt to collect a debt; and (7) whether it threatened consequences should the debtor fail to pay.

*Goodson, 600 F. App'x at 431*. We decline Preferred's invitation for two related reasons.

First, and perhaps most obviously, *Goodson* and the cases that have relied on **[\*1352]** it concern *§ 1692e*—not *§ 1692c(b)*. And as just explained, *§§ 1692c(b)* and *1692e* differ both (1) linguistically, in that the former includes a series of exceptions that an atextual reading risks rendering meaningless, while the latter does not, and (2) operationally, in that they ordinarily involve different parties. *Goodson's* seventh factor—whether the communication threatened consequences **[\*\*22]** should the debtor fail to pay—illustrates this point. It makes little sense for a debt collector to threaten consequences should the debtor fail to pay in a communication that is not sent to the debtor himself.

Second, we believe that in the context of *§ 1692c(b)*, the phrase "in connection with the collection of any debt" has a discernible ordinary meaning that obviates the need for resort to extratextual "factors." All too often, multifactor tests—especially *seven*-factor tests like *Goodson's* — obscure more than they illuminate. Parties to FDCPA-governed transactions—debtors, creditors, debt collectors, lawyers, etc.—are entitled to guidance about the scope of permissible activity. They are likelier to get it even from a broadly framed statutory language than from a judge-made gestalt.


**C**

Lastly, Preferred makes what we'll call an "industry practice" argument. It contrasts what it says is the widespread use of mail vendors like Compumail and the relative dearth of FDCPA suits against them. More particularly, Preferred identifies cases involving mail vendors and emphasizes that none of them hold that a debt collector's mail vendor violated the FDCPA. True enough, but none of the cases that Preferred **[**23]** cites involved *§ 1692c(b)* claims, and the courts in those cases certainly had no obligation to *sua sponte* determine whether the collectors' communications to their vendors violated *§ 1692c(b)*. That this is (or may be) the first case in which a debtor has sued a debt collector for disclosing his personal information to a mail vendor hardly proves that such disclosures are lawful.

One final (and related) point: It's not lost on us that our interpretation of *§ 1692c(b)* runs the risk of upsetting the status quo in the debt-collection industry. We presume that, in the ordinary course of business, debt collectors share information about consumers not only with dunning vendors like Compumail, but also with other third-party entities. Our reading of *§ 1692c(b)* may well require debt collectors (at least in the short term) to in-source many of the services that they had previously outsourced, potentially at great cost. We recognize, as well, that those costs may not purchase much in the way of "real" consumer privacy, as we doubt that the Compumails of the world routinely read, care about, or abuse the information that debt collectors transmit to them. Even so, our obligation is to interpret the law as written, whether or not we think **[**24]** the resulting consequences are particularly sensible or desirable. Needless to say, if Congress thinks that we've misread *§ 1692c(b)*—or even that we've properly read it but that it should be amended—it can say so.


**IV**

To sum up, Hunstein has Article III standing to bring his claim under *§ 1692c(b)*. Further, because Preferred's transmittal of Hunstein's personal debt-related information to Compumail constituted a communication "in connection with the collection of any debt" within the meaning of *§ 1692c(b)*'s key phrase, Hunstein adequately stated a claim.

**REVERSED and REMANDED**.

---

End of Document